UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| MOHSIN A., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 1:20-cv-1502-DB <br><br> MEMORANDUM DECISION <br> AND ORDER |

## INTRODUCTION

Plaintiff Mohsin A. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED,** and the Commissioner's motion (ECF No. 10) is **GRANTED.**

## BACKGROUND

Plaintiff protectively filed his DIB application on February 21, 2018, alleging disability beginning February 21, 2018 (the disability onset date), due to "neck problems, back problems, and diabetes." Transcript ("Tr.") 170-71, 94. Plaintiff's application was denied initially on May 24, 2018, after which he requested an administrative hearing. Tr. 21. On October 29, 2018, Administrative Law Judge Dale Black-Pennington (the "ALJ") presided over a video hearing from

Albany, New York. Tr. 21, 33-61. Plaintiff appeared and testified in Buffalo, New York, and was represented by Carol Brent, an attorney. Tr. 21.

The ALJ issued an unfavorable decision on December 18, 2019, finding that Plaintiff was not disabled. Tr. 21-31. On September 8, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 18, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 18, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since February 21, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine status post anterior cervical discectomy and fusion ("ACDF") and thoracic stenosis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except he can lift and/or carry 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk about six of eight hours, and sit about six of eight hours. He must avoid rapid neck movements. The claimant is able to frequently reach with the right upper extremity, and able to frequently finger and handle with the right upper extremity.

6. The claimant is capable of performing past relevant work as a fast[-]food manager, short order cook, and parking attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2018, through the date of this decision (20 CFR 404.1520(f)).

Tr. 21-31.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on February 21, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 31.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ improperly evaluated the opinion evidence with respect to the opinions of state agency medical consultant, D. Miller, D.O. ("Dr. Miller"), and medical consultative examiner Samuel Balderman, M.D. ("Dr. Balderman"). *See id*. at 11-14. Plaintiff contends that both opinions were stale, and therefore, the ALJ should not have relied on them. *See id*. Next, Plaintiff, argues that the ALJ assessed an RFC that was not supported by substantial evidence. *See id*. at 14-18.

The Commissioner argues in response that the ALJ properly relied on the opinions of Drs. Miller and Balderman, neither of which was stale. *See* ECF No. 10-1 at 6-14. The Commissioner also argues that the RFC assessment, including the restriction to avoiding rapid neck movements, is supported by substantial evidence. *See id*. at 14-18. Further, argues the Commissioner, even if the opinions of Drs. Miller and Balderman were stale, Plaintiff has not demonstrated a reasonable likelihood that the ALJ's decision would have changed had he not relied upon either or both opinions, as substantial evidence would still support the RFC. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly reviewed the evidence of record, including Plaintiff's treatment notes and activities of daily living, as well as the opinions of Dr. Miller and Dr. Balderman, and the ALJ properly concluded that Plaintiff had the RFC for a range of light work with the limitations assessed by the ALJ.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional

6

capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on June 5, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the

new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear

that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

As noted above, Plaintiff argues that the ALJ relied on the "stale" opinions of Dr. Miller and Dr. Balderman. *See* ECF No. 9-1 at 9-13. Contrary to Plaintiff's argument, however, later medical evidence does not render an opinion stale, as long as the "additional evidence does not raise doubts as to the reliability of [the] opinion." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order). "A medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, at *9 (W.D.N.Y. 2017) (citing *Camille*, 652 F. App'x at 28 n.4); *see also Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5-7 (W.D.N.Y.

2021) (rejecting claimant's staleness argument where there was no change in symptoms during the period between the medical source's opinion and a surgery, and his condition improved slightly following surgery); *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, at *5-6 (W.D.N.Y. Aug. 11, 2020) (finding that subsequent knee surgery and spinal impairment did not render a medical opinion impermissibly stale where claimant failed to show evidence of a change in function).

First, the ALJ relied in part on Dr. Miller's May 23, 2018 opinion limiting Plaintiff to the full range of light work. Tr. 28, 100-01. ALJ found Dr. Miller's opinion "partially persuasive," noting that the opinion was supported with citations to relevant medical evidence. Tr. 28. However, the ALJ found that other evidence of record, including the history of surgery and imaging evidence confirming Plaintiff's right shoulder pain, justified additional limitations on neck movement and use of the right upper extremity. The ALJ discussed the post-surgical evidence of record, which did not show that Plaintiff's condition deteriorated to any significant degree after Dr. Miller rendered the opinion. Tr. 26-27. Plaintiff's latest surgery (a cervical spine fusion with related procedures) occurred on April 23, 2018, one month prior to Dr. Miller's opinion. Tr. 367-68.

On May 7, 2018, approximately two weeks after surgery, Plaintiff told his orthopedic surgeon, Jeffrey Lewis, M.D. ("Dr. Lewis"), that he was "already driving," which Dr. Lewis found "reasonable," given that Plaintiff exhibited "good" range of motion. Tr. 364. Plaintiff's primary care provider, Christopher Biondolillo, M.D. ("Dr. Biondolillo"), similarly observed full range of motion of the neck with mild tenderness about two weeks later. Tr. 584. Plaintiff reported a pain level of 6 out of 10, with use of ibuprofen, and, otherwise, he only complained of difficulty swallowing and changes in his voice. Tr. 583. A cervical spine x-ray from July 3, 2018, showed stable surgical changes, with no clear indication of any significant deterioration. Tr. 550-51.

On July 12, 2018, Plaintiff told Dr. Lewis that his neck was doing well, but his long-standing right scapular pain had not improved as Plaintiff had hoped. Tr. 552. His other major complaint was voice hoarseness and weakness. Tr. 552. According to the treatment notes, Dr. Lewis did not discuss the July 3, 2018, x-ray at this visit. Tr. 552-53. On September 10, 2018, Plaintiff reported to Dr. Lewis that his neck pain had returned after about two-to-three months of relief. Tr. 558. He also complained of right upper extremity radiculopathy. Tr. 558. Dr. Lewis recommended trigger point injections (Tr. 558), but there is no indication that Plaintiff pursued this treatment.

On October 31, 2018, the latest visit available in the record, Dr. Lewis indicated that recent thoracic spine imaging showed small disc herniations consistent with Plaintiff's long-standing scapular pain, which had shifted more toward the midline. Tr. 563, 554-56. Plaintiff did not repeat his previous complaint of right arm radiculopathy and, in fact, denied arm pain. Tr. 563-64. Dr. Lewis also indicated that Plaintiff had healed well from his neck surgery, but he did not discuss a recent CT scan of the cervical spine, which did not clearly indicate any significant deterioration of the cervical spine. Tr. 560-62, 563-64. Although Dr. Lewis scheduled Plaintiff for a similar surgery on his thoracic spine to resolve the scapular pain and referred Plaintiff to an ear, nose, and throat doctor for his voice issues (Tr. 564), there is no evidence that Plaintiff underwent thoracic surgery prior to the date of the decision (Tr. 56).

On December 31, 2018, Plaintiff presented to the emergency department ("ED") after lacerating his thumb while performing carpentry. Tr. 734. On April 30, 2019, Plaintiff told Dr. Biondolillo that he had stopped taking pain medication for his neck due to unspecified "issues." Tr. 569. However, because he continued to have the same "issues" after stopping the medication and his pain had worsened, Plaintiff asked Dr. Biondolillo to restart the medication. Tr. 569. Dr.

Biondolillo's examination was unremarkable. Tr. 570. On July 22, 2019, Plaintiff went to the ED complaining of lateral left chest pain for the past ten days. Tr. 672, 674. On examination, he had normal range of motion, only mild distress, and no focal neurological deficit. Tr. 675. The ED physician assessed that Plaintiff's chest pain was not due to any musculoskeletal issues and was likely due to acid reflux or GERD. Tr. 674.

Plaintiff argues that Dr. Miller's opinion is stale because subsequent evidence shows that Plaintiff's condition "did not improve." *See* ECF No. 9-1 at 12. Contrary to Plaintiff's argument, lack of improvement is not the standard. Rather, the record must show a deterioration in Plaintiff's condition for which the opinion at issue could not have accounted. *See Alexander v. Comm'r of Soc. Sec.*, No. 19-762, 2020 WL 5642184, at *3 (W.D.N.Y. Sept. 22, 2020) (rejecting argument that opinion was stale where Plaintiff did not demonstrate deterioration in her condition since date of opinion, and evidence in fact showed stability of her condition).

Plaintiff also argues that Dr. Miller's opinion is stale because "it could not review significant imaging which occurred after this opinion was rendered." *See* ECF No. 9-1 at 12-13. According to Plaintiff, "the opinion of an examining doctor who did not review an MRI cannot be relied upon." *See id*. However, no such blanket rule exists. Plaintiff's citation to *Burgess v. Astrue*, 537 F.3d 117, 132 (E.D.N.Y. 2014), is inapposite because that case did not involve a staleness issue, but rather, contended that a treating source opinion should have been given controlling weight under 20 C.F.R. § 404.1527. *See* 537 F.3d 117, (2d Cir. 2008). The court in *Burgess* found that the ALJ incorrectly relied on a non-examining medical expert's opinion to contradict the treating source opinion, where the medical expert had neglected to consider an MRI scan that was in the file and that supported the treating source's opinion. *See Burgess*, 537 F.3d at 125, 130-31. Thus, *Burgess* does not stand for a bright-line rule that an opinion is stale if the source of the

12

opinion did not review all the imaging evidence of record, as Plaintiff suggests. *See* ECF No. 9-1 at 13.

Further, Dr. Miller did not "lack[] imaging studies," as Plaintiff erroneously implies. *See* ECF No. 9-1 at 12, 13. Dr. Miller cited a thoracic spine MRI from August 10, 2016 (Tr. 383-84), and a cervical spine CT scan (Tr. 334-37) and MRI (*see* Tr. 340-42) from January 29, 2018. Tr. 101. While Plaintiff cites updated imaging, including the July 3, 2018, cervical x-ray (Tr. 550-51), the August 6, 2018 thoracic spine MRI (Tr. 554-56), and the October 17, 2018 cervical CT scan (560-62), he does not explain how this evidence demonstrates any significant deterioration in his condition. *See* ECF No. 9-1 at 12-13. Although Dr. Lewis ordered all these scans (Tr. 550, 554, 560), the subsequent treatment notes do not indicate that he found them to reflect any significant worsening of Plaintiff's impairments. Tr. 552-53, 558-59, 563-65. Accordingly, despite reports of recurrent pain, the evidence does not establish that Plaintiff had any clear deterioration of the cervical spine, or that he developed any new impairments such that Dr. Miller's assessment was rendered stale.

For similar reasons, Plaintiff's argument that Dr. Balderman's April 11, 2018 opinion was stale is likewise unpersuasive. Dr. Balderman opined that Plaintiff had moderate limitations in "frequent changes in position of the head," as well as in "reaching, pushing, and pulling with the right upper extremity" and in "use of the right hand for repetitive gross motor work." Tr. 358-59. The ALJ found the opinion "generally persuasive," noting a degree of support from the doctor's examination of Plaintiff and the opinion's consistency with the other medical evidence of record. Tr. 28. Contrary to Plaintiff's contention (*see* ECF No. 9-1 at 12), the fact that Dr. Balderman's opinion was rendered prior to Plaintiff's April 23, 2018, surgery does not *per se* render it stale. *See Alexander*, 2020 WL 5642184, at *3 ("A subsequent surgery, however, is insufficient, standing

13

alone to render a medical opinion stale."); *Kidd v. Comm'r of Soc. Sec.*, No. 18-217, 2019 WL 1260750, at *3-4 (W.D.N.Y. Mar. 19, 2019) (rejecting argument that consultative examiner's opinion was stale because of intervening knee surgery).

As previously explained, the medical evidence shows that Plaintiff did not experience any significant deterioration in his condition following the April 23, 2018 cervical fusion surgery. Notably, treating source examinations generally showed no significant deficit in the cervical spine range of motion or in the functioning of the right upper extremity. *See, e.g.*, Tr. 364, 570, 588-89, 672, 675, 735. Although Plaintiff reported some post-surgical arm pain, it was gone by October 31, 2018. Tr. 563. Plaintiff reported right-sided radiculopathy to Dr. Lewis on September 10, 2018 (Tr. 558), but he did not later repeat this complaint to either Dr. Lewis or Dr. Biondolillo (*see* Tr. 563, 569). Because the evidence does not suggest any clear deterioration of the cervical spine after surgery, or that Plaintiff developed any new impairments, Plaintiff's staleness argument fails.

Contrary to Plaintiff's assertion (*see* ECF No. 9-1 at 14-17), the ALJ's RFC assessment is supported by substantial evidence, including the non-stale opinion evidence discussed above. However, even if the opinions of Drs. Miller and Balderman were stale (which they are not), Plaintiff has not demonstrated a reasonable likelihood that the ALJ's decision would have changed had he not relied upon either or both of these opinions, because substantial evidence would still support the RFC. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding remand not warranted without "reasonable likelihood" that ALJ's decision would have been different absent error); *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (party challenging agency decision must demonstrate that error was prejudicial).

As discussed above, the ALJ is responsible for formulating the RFC based on the evidence as a whole. *See Matta*, 508 F. App'x at 56; 20 C.F.R. § 404.1545(a)(3). Opinion evidence is only

one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

It is also the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety); *see also Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")). Additionally, an ALJ need not discuss every shred of evidence considered, as long as the court can glean the ALJ's rationale based on a reading of the entire decision together with the evidence of record. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

Here, the ALJ's rationale for the RFC limitations is evident from the decision and the record. The light work restriction and the limitations to frequent reaching, handling, and fingering with the right upper extremity and avoiding rapid neck movements are all consistent with Dr. Miller's opinion (Tr. 100-01), as well as Dr. Balderman's opinion that Plaintiff had no more than

moderate limitations (Tr. 358-59). Tr. 24. Courts have found "moderate" physical limitations to be consistent with an RFC for even the full range of light work. *See Gurney v. Colvin*, No. 14-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding consultative examiner assessment of "moderate limitations with respect to 'repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying,'" consistent with plaintiff's RFC for full range of light work); *Vargas v. Astrue*, No. 10-6306, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding assessments of moderate limitation in lifting, carrying, handling objects, and climbing stairs consistent with capacity for full range of light work); *cf.* 20 C.F.R., Pt. 404, Subpt. P, App'x 1 § 12.00F.2 (noting, in mental context, that "moderate limitation" denotes "fair" residual ability, without serious limitation, to perform activity "independently, appropriately, effectively, and on a sustained basis").

Furthermore, Plaintiff's argument that the ALJ's RFC did not incorporate Dr. Balderman's moderate limitation in frequent changes in head positioning (*see* ECF No. 9-1 at 13-14) is meritless. Contrary to Plaintiff's contention that the ALJ's restriction to avoid rapid neck movements was not tethered to any medical opinion evidence (*see id*. at 17), it is evident from the record and the decision how the ALJ reached the RFC restriction to avoid rapid neck movements. *See Cichocki*, 729 F.3d at 178 n.3. The ALJ specifically cited Plaintiff's history of three neck surgeries and the August 2018 MRI showing thoracic disc bulging in finding that the neck restrictions were appropriate. Tr. 28. Based on the above-cited medical and other evidence supporting the RFC, however, the ALJ reasonably concluded that no additional restrictions were needed. Tr. 24.

The ALJ's RFC assessment is also supported by Plaintiff's treatment notes, which do not generally show any significant deficit of gait or of loss of motion, strength, or sensation in the

lumbar spine or lower extremities. *See, e.g.*, Tr. 364, 570, 577, 588-89, 672, 675, 735. They also generally show no significant deficit in cervical range of motion or in the functioning of the right upper extremity. *See, e.g.*, Tr. 364, 570, 584, 588-89, 672, 675, 735. Plaintiff's function report and daily activities also supported the ALJ's finding that Plaintiff was capable of engaging in sustained work activity at the light exertional level. *Monroe*, 676 F. App'x at 9 (noting that the ALJ could rely on activities of daily living to formulate the RFC assessment).

As the ALJ noted, Plaintiff reported on his March 26, 2018 function report that his medication relieved his pain within 10-15 minutes of administration for a period of two-to-three hours. Tr. 27, 249. He even stopped his pain medications for a period, although he eventually asked to go back on the medication. Tr. 569. *See Debra M. v. Berryhill*, No. 17-1359, 2019 WL 1396963, at *7 (N.D.N.Y. Mar. 28, 2019) (indicating claimant's "limited use of medication" was proper ground to discount allegations of disabling symptoms); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

Additionally, the ALJ noted that Plaintiff reported a wide range of daily activities. Tr. 27. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i); *Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) (summary order) (holding consideration of daily activities appropriate in determining capacity for basic work activities). Despite his impairments, Plaintiff was able to perform activities of daily living, including dressing, bathing, and grooming himself. Tr. 54, 354. He could prepare food,

17

clean, shop, and do laundry; he could also, drive, take public transportation, and go out alone; and he played with his children and took them places. Tr. 44, 236, 239-40, 354. The treatment notes also indicate that Plaintiff was able to drive and engage in carpentry after having surgery. Tr. 364, 734.

This evidence suggests that Plaintiff could perform the sitting, standing, walking, lifting, and carrying necessary for light work (*see* 20 C.F.R. § 404.1567(b)); that he could tolerate frequent reaching, handling and fingering with the right upper extremity; and that he could move his neck, as long as he avoided rapid movements. Thus, in addition to the opinion evidence, Plaintiff's treatment notes, daily activities and functional abilities provide further support for the ALJ's RFC finding. Plaintiff does not point to any evidence in the record that shows that the ALJ was required to find greater restrictions. Accordingly, the RFC finding was proper.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448 (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole; carefully evaluated the medical opinion evidence and other evidence; and his finding that Plaintiff could perform a range of unskilled light work was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No.9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE